IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JEREMY JOSEPH HAMMILL,
         Petitioner,

vs.                                    Case No.:  3:17cv443/LAC/EMT

MARK S. INCH,[1]
         Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus

filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and

relevant portions of the state court record (ECF No. 19).  The court provided

Petitioner an opportunity to file a reply (*see* ECF No. 20), but he has not done so.

The case was referred to the undersigned for the issuance of all preliminary

orders and any recommendations to the district court regarding dispositive matters.

*See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ.

P. 72(b).  After careful consideration of all issues presented by the parties, it is the

opinion of the undersigned that the pleadings and attachments before the court show

that Petitioner is not entitled to federal habeas relief.

---

[1] Mark S. Inch succeeded Julie L. Jones as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d).

I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 19).[2]  Petitioner was charged in the Circuit Court in and for Santa Rosa County, Florida, Case No. 2011-CF-329, with one count of DUI manslaughter (Count 1) and one count of DUI with serious bodily injury (Count 2) (Ex. B1 at 27).  Following a jury trial on December 9, 2011, Petitioner was found guilty as charged (*see* Ex. B2 at 223).  On April 3, 2012, the court sentenced Petitioner to fifteen (15) years in prison, with a four-year minimum mandatory, on Count 1, and a consecutive term of five (5) years in prison on Count 2 (Ex. B2 at 317–23).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D12-2240 (Ex. B4).  The First DCA affirmed the judgment per curiam without written opinion on September 13, 2013, with the mandate issuing October 1, 2013 (Ex. B7, B8).  Hammill v. State, 121 So. 3d 45 (Fla. 1st DCA 2013) (Table).

---

[2] Hereinafter all citations to the state court record refer to the exhibits submitted by Respondent (ECF No. 19).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

On November 8, 2013, Petitioner filed a motion to mitigate, modify, or reduce sentence in the state circuit court, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. C1 at 14–18).  The court denied the motion on November 15, 2013 (*id.* at 21).

On October 8, 2014, Petitioner filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. C1 at 46–60).  The court dismissed the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within sixty (60) days (*id.* at 111–12).  Petitioner filed a timely amendment (*id.* at 113–28).  The court granted a limited evidentiary hearing and appointed counsel to represent Petitioner (Ex. C2 at 204–06, Ex. C3).  Following the hearing, the state circuit court denied the amended Rule 3.850 motion (Ex. C2 at 209–17).  Petitioner appealed the decision to the First DCA, Case No. 1D16-0434 (Ex. C4).  The First DCA affirmed the decision per curiam without written opinion on March 3, 2017, with the mandate issuing May 8, 2017 (Exs. C7, C10).  Hammill v. State, 230 So. 3d 1180 (Fla. 1st DCA 2017) (Table).

On February 27, 2015, during the pendency of the Rule 3.850 proceedings, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D15-

0995, alleging ineffective assistance of appellate counsel (Ex. D1). The First DCA denied the petition on the merits on April 14, 2015 (Ex. D3). Hammill v. State, 212 So. 3d1055 (Mem) (Fla. 1st DCA 2015) (Table).

Petitioner filed the instant federal habeas action on June 23, 2017 (ECF No. 1).

## II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254. Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the Williams framework, on any issue presented in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See* Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court holdings. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.

*See* Panetti v. Quarterman, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's holdings.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  Williams, 529 U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Harrington, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

Woods, 135 S. Ct. at 1376 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on an unreasonable fact finding. *See* Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based

challenges to state court adjudications.  *See* <u>Cave v. Sec'y for Dep't of Corr.</u>, 638

F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit has declined to grant

habeas relief under § 2254(d)(2) in the context of a state appellate court's summary

affirmance, where it found that the validity of the state court decision was not

premised on the trial court's unreasonable fact finding, and that the petitioner failed

to demonstrate "by clear and convincing evidence that the record reflect[ed] an

insufficient factual basis for affirming the state court's decision."  <u>Gill</u>, 633 F.3d at

1292.

Only if the federal habeas court finds that the petitioner satisfied § 2254(d),

does the court take the final step of conducting an independent review of the merits

of the petitioner's claims.  *See* <u>Panetti</u>, 551 U.S. at 954.  Even then, the writ will not

issue unless the petitioner shows that he is in custody "in violation of the Constitution

or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is

difficult to meet, that is because it was meant to be."  <u>Richter</u>, 562 U.S. at 102.

Within this framework, the court will review Petitioner's claim.

III.  PETITIONER'S CLAIM

<u>Ground One:  "The state court decision to summarily deny Ground One of
Petitioner's Rule 3.850 motion and the First District Court of Appeals per
curiam affirmance on appeal resulted in a decision that was contrary to, or</u>

<u>involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.</u>"

Petitioner alleges defense counsel was ineffective for failing to investigate how law enforcement obtained a sample of his blood to determine its blood/alcohol content (ECF No. 1 at 22–28). Petitioner alleges if counsel had investigated, he would have learned that Petitioner initially refused to provide a sample at the scene of the car accident, and that Petitioner then consented to the blood draw only after Officer Holley told him that the blood draw "could be taken forcibly" (*see id.* at 23). Petitioner alleges none of the officers at the scene had a warrant for the blood draw, and there were no exigent circumstances warranting the blood draw. Petitioner alleges if defense counsel had investigated this issue, he would have discovered that grounds existed to suppress the blood draw, on the ground that his consent was the product of Officer Holley's threat. Petitioner alleges the blood test result was the only evidence of his intoxication at the time of the accident. He alleges if counsel had investigated and moved to suppress the blood test result, he would not have been convicted.

Respondent asserts that it appears Petitioner exhausted this claim in the state courts (ECF No. 19 at 6–7). Respondent contends Petitioner has failed to demonstrate that the state court's adjudication of the claim was based on an unreasonable

determination of the facts, or that it was contrary to or an unreasonable application of clearly established federal law (*id.* at 7–20).

### 1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

The focus of inquiry under the performance prong of Strickland is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. Strickland, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" <u>Id.</u> (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" <u>Jones</u>, 436 F.3d at 1293 (citing <u>Chandler</u>, 218 F.3d at 1314–15 n.15). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. <u>See</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, Petitioner must show "that every fair-minded jurist

would conclude 'that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.'" <u>Jones</u>

<u>v. GDCP Warden</u>, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting <u>Strickland</u>, 466 U.S.

at 694).  "A reasonable probability is a probability sufficient to undermine confidence

in the outcome," not that counsel's conduct more likely than not altered the outcome

of the proceeding.  <u>Id.</u> (citation omitted).  And Petitioner must show that the

likelihood of a different result is substantial, not just conceivable.  <u>Williamson v. Fla.</u>

<u>Dep't of Corr.</u>, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing <u>Richter</u>, 562 U.S. at 112).

Finally, when a district court considers a habeas petition, the state court's

findings of historical facts in the course of evaluating an ineffectiveness claim are

subject to the presumption of correctness, while the performance and prejudice

components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier</u>

<u>v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting <u>Strickland</u>'s high bar

is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371, 130 S. Ct. 1473, 176

L. Ed. 2d 284 (2010).  As the court explained in <u>Richter</u>:

> An ineffective-assistance claim can function as a way to escape rules of
> waiver and forfeiture and raise issues not presented at trial, and so the
> <u>Strickland</u> standard must be applied with scrupulous care, lest 'intrusive
> post-trial inquiry' threaten the integrity of the very adversary process the
> right to counsel is meant to serve.  <u>Strickland</u>, 466 U.S. at 689–690, 104

S. Ct. 2052.  Even under de novo review, the standard for judging counsel's representation is a most deferential one.

. . . .

    Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," *id.* at 689, 104 S. Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333 n.7, 117 s. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, <u>Knowles [v. Mirzayance]</u>, 556 U.S. [111,] 123, 129 S. Ct. [1411,] 1420[, 173 L. Ed. 2d 251 (2009)].  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  556 U.S. at 123, 129 S. Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Richter</u>, 562 U.S. at 105.

### 2.    Federal Review of State Court Decision

Petitioner presented this ineffective assistance of trial counsel ("IATC") claim as Ground 1 of his amended Rule 3.850 motion (Ex. C1 at 115–17).  In the state circuit court's written decision denying the claim, the court correctly stated the deficient performance and prejudice prongs of the <u>Strickland</u> standard as the applicable legal standard (Ex. C2 at 210–11).  The court adjudicated the claim as follows:

    In Ground 1, Defendant claims that trial counsel was ineffective for failing to investigate how his blood sample was obtained at the scene

and file a motion to suppress the blood alcohol results.  He alleges that he told counsel that his blood sample was obtained by threat and without a warrant, but counsel failed to investigate.  He also alleges that if counsel had investigated and filed a motion to suppress, the blood-alcohol results would have been suppressed and he would not have been convicted.

The Court finds that Defendant has not demonstrated that counsel's performance was deficient or that he was prejudiced.  If counsel would have filed a motion to suppress the blood alcohol results, the Court would have denied the motion.  The blood draw was authorized by section 316.1933(1)(a), Florida Statutes (2010), which provides:

> If a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages, any chemical substances, or any controlled substances has caused the death or serious bodily injury of a human being, a law enforcement officer shall require the person driving or in actual physical control of the motor vehicle to submit to a test of the person's blood for the purpose of determining the alcoholic content thereof or the presence of chemical substances as set forth in s. 877.111 or any substance controlled under chapter 893.  The law enforcement officer may use reasonable force if necessary to require such person to submit to the administration of the blood test.  The blood test shall be performed in a reasonable manner.  Notwithstanding s. 316.1932, the testing required by this paragraph need not be incidental to a lawful arrest of the person.

At trial, Corporal Ferguson testified to the following.  At the scene, he encountered three people who were involved in the accident—Defendant, Tammy Cabaniss (the driver of the other vehicle), and Dwight Davis (the passenger of the other vehicle).  Cabaniss seemed

to be bloody.  Davis was being worked on by paramedics.  Defendant
smelled of alcohol and started chewing gum after their initial encounter.
He agreed to give a blood sample after being told that he was required
to do so.

Officer Roger Holley testified to the following.  There were three
people on the scene who were involved in the accident—Defendant,
Cabaniss, and Davis.  Cabaniss was bleeding a little bit from her head.
Davis was trapped in the other vehicle and had extensive injuries.
Defendant's eyes were watery and his breath smelled of alcohol.  He
submitted to a blood draw, which was performed at the scene.

Samantha Moore testified to the following.  She arrived at the
scene moments after the accident.  The only people at the scene were
Defendant, Cabaniss, and Davis.  Cabaniss was very bloody.  Davis said
that he could not breathe.  He was stuck in the other vehicle.  Moore
could see that Davis had been crushed by the impact.  The truck door
was open, and Defendant was standing in front of the truck.  He was
talking on a cell phone and looking at the damage to the truck.  He
reeked of alcohol.  He told her that he hit the other vehicle, and he
apologized several times.  Emergency personnel testified that Davis had
to be extricated from the other vehicle and lost consciousness before he
was transported from the scene.  The parties stipulated that the truck was
registered to Defendant and another person.

Based on the totality of the circumstances, the responding officers
had probable cause to believe that Defendant was driving his truck, that
he had caused serious bodily injury to another, and that be was under
influence of alcohol.  *See Montes-Valeton v. State*, 414 So. 3d 204, 207
(Fla. 3d DCA 2014); *Williams v. State*, 731 So. 2d 48, 50–51 (Fla. 2d
DCA 1999).  As a result, the officers were required to obtain a blood
sample from Defendant pursuant to section 316.1933(1)(a).  The Court
therefore concludes that Ground 1 should be denied.  *See Gettel v. State*,
449 So. 2d 413, 414 (Fla. 2d DCA 1984).

(Ex. C2 at 211–13 (footnotes citing to portions of the trial transcript omitted)).  The First DCA affirmed the decision without written opinion (Ex. C7).

The Fourth Amendment protects against unreasonable searches and seizures. Amend. IV, U.S. Const.  A blood draw conducted at the direction of the police is a search and seizure under the Fourth Amendment.  *See* Schmerber v. California, 384 U.S. 757, 767, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966).  A search conducted without a warrant issued upon probable cause is *per se* unreasonable under the Fourth Amendment, subject only to a few well-established exceptions.  *See* Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

Petitioner argues that counsel could have successfully argued for suppression of the blood evidence pursuant to Missouri v. McNeely, — U.S. —, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013).  McNeely dealt with the "exigent circumstances" exception to the warrant requirement, which applies "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment."  McNeely, 133 S. Ct. at 1558 (internal quotation marks and citation omitted).  Applying that exception, the United States Supreme Court upheld the constitutionality of the warrantless blood draw in Schmerber, because the officer reasonably believed that the delay involved in securing

a warrant would result in the dissipation of alcohol in a driver's blood, *see* Schmerber, 384 U.S. at 772; but the Court clarified that the natural metabolization of alcohol in the bloodstream does not create a *per se* exigency justifying warrantless, nonconsensual blood testing in all DUI cases, though it is a relevant consideration in determining if exigent circumstances exist. McNeely, 133 S. Ct. at 1568. After McNeely, Florida courts held that law enforcement officers "are no longer categorically permitted to obtain a suspect's blood sample without a warrant simply because the alcohol is leaving the suspect's blood stream." State v. Liles, 191 So. 3d 484, 488 (Fla. 5th DCA 2016) (internal quotation marks, alteration, and citation omitted).

Another well-established exception to the warrant requirement is a search conducted pursuant to consent. *See* Davis v. United States, 328 U.S. 582, 593–94, 66 S. Ct. 1256, 90 L. Ed. 1453 (1946). Florida Statutes § 319.1933(1)(a) is one of the trilogy of statutes that comprise Florida's implied consent statutory scheme. *See* Liles, 191 So. 3d at 487. In Williams v. State, 167 So. 3d 483, 490 (Fla. 5th DCA 2015), the Florida Fifth DCA held that statutory implied consent was not the equivalent of Fourth Amendment consent, and that a driver's initial affirmative refusal

of a breath test constituted a revocation of statutory implied consent. *Id.* at 491.[3] The

court noted that the issue (i.e., whether statutory implied consent was the equivalent

of Fourth Amendment consent) was a matter of first impression in Florida. *Id.* at 490.

The problem for Petitioner is that <u>McNeely</u>, <u>Liles</u>, and <u>Williams</u> were decided

<u>after</u> Petitioner's blood draw on February 27, 2010, and <u>after</u> Petitioner's trial on

December 9, 2011. "[R]easonably effective representation cannot and does not

include a [r]equirement to make arguments based on predictions of how the law may

develop." <u>Rambaran v. Sec'y, Dep't of Corr.</u>, 821 F.3d 1325, 1334 (11th Cir. 2016).

Prior to Petitioner's trial, binding precedent in the Florida courts permitted blood

draws under Florida Statutes § 316.1933(1)(a) without a warrant, the driver's consent,

or exigent circumstances, under the following circumstances: (1) the officer had

probable cause to believe that a motor vehicle driven by or in the actual physical

control of the person under the influence of alcoholic beverages had caused the death

or serious bodily injury of a human being, (2) the officer used reasonable force in

requiring such person to submit to the blood test, and (3) the blood test was performed

---

[3] The Florida Supreme Court vacated the Fifth District's decision for reconsideration in light of the Supreme Court's issuance of <u>Birchfield v. North Dakota</u>, — U.S. —, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016). <u>Williams</u>, No. SC15-1417, 2016 WL 6637817 (Fla. Nov. 9, 2016). On remand, the Fifth District found its "task significantly easier" and concluded "that breath-alcohol tests are permissible under the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement." <u>Williams v. State</u>, 210 So. 3d 774, 776 (Fla. 5th DCA 2017).

in a reasonable manner. *See* Jackson v. State, 456 So. 2d 916 (Fla. 1st DCA 1984)
(holding that section 316.1933 was not unconstitutional on its face or as applied where
officer had probable cause to believe that driver had caused death or serious bodily
injury of another human being and that driver was under the influence of alcohol).

Furthermore, even if Petitioner's counsel argued for suppression on the ground
that neither the consent nor exigent circumstances exception applied, there is no
reasonable probability the trial court would have granted the motion to suppress
because of Officer Holley's good faith reliance on section 316.1933 and courts'
interpretation of that statute at the time of his conduct. The exclusionary rule is a
judicially-created remedy adopted to protect Fourth Amendment rights by deterring
illegal searches and seizures. *See* Davis v. United States, 564 U.S. 229, 131 S. Ct.
2419, 180 L. Ed. 2d 285 (2011). It is intended to deter police misconduct, not to
remedy the prior invasion of a defendant's constitutional rights. *See* Montgomery v.
State, 69 So. 3d 1023, 1033 (Fla. 5th DCA 2011). Because the primary purpose of the
exclusionary rule is to "deter future unlawful police conduct," Stone v. Powell, 428
U.S. 465, 484, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), the rule has not been applied
in certain circumstances, such as when an officer acts in objectively reasonable

reliance on a subsequently invalidated statute, *see* <u>Illinois v. Krull</u>, 480 U.S. 340, 355, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987).

Applying the objective standard of reasonableness mandated by <u>Krull</u> to the facts presented by Petitioner here, before <u>McNeely</u> and <u>Williams</u>, it was reasonable for the officers to have a good-faith belief in the constitutional validity of a warrantless blood draw authorized by section 316.1933(1)(a), even in the absence of exigent circumstances or Petitioner's Fourth Amendment consent. *See, e.g.*, <u>State v. Bender</u>, 382 So.2d 697, 698 (Fla. 1980) ("There is no constitutional impediment to a blood alcohol analysis with or without consent where probable cause has been established."); <u>Liles</u>, 191 So. 3d at 489–90 (holding that Fourth Amendment's exclusionary rule did not apply to deprive the state of the benefit of blood draw evidence obtained as a result of the officers' good-faith reliance on binding precedent that allowed for such draws in all DUI cases, when such draws were taken before <u>McNeely</u>).

The state court denied Petitioner's IATC claim on the ground that Petitioner failed to show deficient performance or prejudice, because the trial court would have denied a motion to suppress the blood alcohol results if defense counsel had made one. Petitioner has not demonstrated that the state court's adjudication of his IATC claim

was based upon an unreasonable determination of fact, of that it was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, Petitioner is not entitled to federal habeas relief.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  <u>Buck v. Davis</u>, 580 U.S.—, 137 S. Ct.

759, 773, 197 L. Ed. 2d 1 (2017) (citing <u>Miller-El</u>, 537 U.S. at 327).  Here, Petitioner cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

1.    The clerk of court is directed to substitute Mark S. Inch for Julie Jones as Respondent.

And it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**; and

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22<u>nd</u> day of January 2019.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**